[No. B034656. Second Dist., Div. Seven. Mar. 15, 1989.]

NORTH RIVER INSURANCE COMPANY, Plaintiff and Respondent, v.
AMERICAN HOME ASSURANCE COMPANY, Defendant and Appellant.

---

**COUNSEL**

Nelsen, Tang, Thompson, Pegue & Thornton and Jaymeson Pegue for Defendant and Appellant.

Cotkin, Collins & Franscell, Bruce A. Friedman and Andrew W. Vorzimer for Plaintiff and Respondent.

---

**OPINION**

**WOODS (Fred), J.**—This appeal follows a judgment of the Los Angeles County Superior Court, the Honorable David A. Thomas, judge presiding, rendered in an action for declaratory relief in favor of plaintiff and respondent North River Insurance Company (hereafter North River) against defendant and appellant American Home Assurance Company (hereafter American Home). The judgment is affirmed in all respects with the exception that prejudgment interest at the rate of 10 percent per annum is reversed, and the judgment is modified so that prejudgment interest is calculated at 7 percent per annum per respondent's concession.

### INTRODUCTION

Both North River and American Home filed cross-motions for summary judgment in the trial court. The factual foundation for these motions for summary judgment was undisputed and was based upon a stipulation of facts filed with the lower court. As a result, there are no issues of fact presented by this appeal, only issues of law. The trial court ruled in favor of North River finding that the North River policy was excess to American Home's primary claim's made policy. Since the American Home policy had not been exhausted, North River's contingent excess policy was not invoked. Judgment was entered on May 18, 1988. As a result thereof, American Home timely filed this appeal.

## FACTUAL SYNOPSIS

The underlying declaratory relief action arose out of a settlement of a malpractice claim[1] by the estate of Howard Hughes and Summa Corporation against the law firm of Davis & Cox. In 1979, in several actions filed in various courts, Davis & Cox was named as a defendant or counter-defendant by Summa Corporation for alleged legal malpractice and breach of fiduciary duties.

In October of 1985, all litigation involving Summa Corporation and Davis & Cox was settled. Pursuant to the settlement agreement, North River contributed $2 million, although this payment was made under a reservation of rights to claim that the payment was the sole responsibility of American Home under the policies which it issued to Davis & Cox.

The essence of the underlying action was to determine the priority of payment of the insurance coverage provided by North River and American Home. The four policies involved were: 1. American Home Professional Liability Policy No. LPL 2539613 which provided primary occurrence coverage and was in effect between January 15, 1970, and January 15, 1977; 2. American Home First Layer Excess Policy No. CE 356630 which provided "specific excess" insurance over American Home's own primary occurrence policy No. LPL 2539613, and was in effect between January 15, 1970, and January 15, 1976; 3. American Home Primary "Claims Made" Policy No. LPL 6164815 which provided coverage between January 15, 1979, and January 15, 1980, on a claims made basis;[2] and 4. North River policy No. DCL 009035 which provided "contingent excess" insurance and was in effect between January 15, 1973, and January 15, 1976.

There is no controversy as to the coverage afforded by American Home's primary policy No. LPL 2539613 and First Layer Excess Policy No. CE 356630. The issue involved in this appeal is the priority of payment between American Home's "claims made" policy No. LPL 6164815 and North River's "contingent excess" policy No. DCL 009035.

On January 15, 1979, American Home issued a primary "claims made" policy to Davis & Cox which replaced their earlier "occurrence" policies. This primary "claims made" policy was effective from January 15, 1979,

---

[1] All parties to this appeal agree that the act which triggered the malpractice claim occurred on January 15, 1975. Since the matters were settled, no contentions are involved in this appeal as to the existence or nonexistence of an act of legal malpractice.

[2] The only policy not in effect on the date of the event triggering the claim of legal malpractice against Davis & Cox, January 15, 1975.

until January 15, 1980, and provided for $2 million in primary coverage. The policy covered any claim asserted against Davis & Cox during the policy period, regardless of when the acts which constituted the legal malpractice occurred. This policy was in effect at the time the malpractice claims were made against Davis & Cox, although the event triggering the malpractice claim occurred on January 15, 1975, a date preceding the issuance of the policy.

North River issued a "contingent excess" policy No. DCL 009035 to Davis & Cox. This policy provided $2 million in excess coverage and was effective from January 15, 1973, to January 15, 1976. The liability of the North River policy was contingent upon the exhaustion of the total of the applicable limits of the underlying coverage listed in Schedule A of the North River policy and the applicable limits of any other underlying insurance collectible by the insured.

### CONTENTIONS ON APPEAL

American Home has appealed the judgment in favor of North River and contends as follows: 1. The trial court erred in failing to conclude that American Home's primary "claims made" policy is transformed into an excess policy due to its "other insurance" provision; and 2. The trial court erred in awarding prejudgment interest at the rate of 10 percent per annum.[3]

### DISCUSSION

*General distinction between primary and excess insurance.*

The focus of this litigation highlights the distinction between a primary and an excess insurance policy. ■■■ There are two levels of insurance coverage—primary and excess. Primary insurance is coverage under which liability "attach[es] to the loss immediately upon the happening of the occurrence." (*Oil Base, Inc.* v. *Transport Indem. Co.* (1956) 143 Cal.App.2d 453, 467 [299 P.2d 952].) Liability under an excess policy attaches only after all primary coverage has been exhausted. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 600 [178 Cal.Rptr. 908].)

---

[3] North River concedes this error and asserts that prejudgment interest should have been awarded at the rate of 7 percent per annum vice 10 percent per annum.

*The effect of the "other insurance" clause in the American Home policy.*

American Home concedes in the appellant's opening brief that its "claims made" policy No. LPL 6164815 provides primary coverage. American Home, however, contends that the presence of the "other insurance" provision,[4] in the American Home primary "claims made" policy No. LPL 6164815, transforms that policy into an excess policy. The argument has been considered and rejected consistently in California courts. ■ The presence of an "other insurance" provision in a primary policy does not transform that primary policy into an excess policy vis-à-vis a secondary carrier with excess coverage. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d 593, 599; *Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d 453, 467-468.)

In essence, American Home contends that its policy does not provide coverage for acts or omissions which occur prior to its policy period if other insurance existed. American Home relies upon *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835 [140 Cal.Rptr. 493] for the proposition that the "other insurance" provision contained in the American Home policy makes American Home's primary policy excess to the North River policy.

American Home's reliance upon *Chamberlin* v. *Smith* is misplaced. *Chamberlin* is distinguishable for several reasons. First, the policy at issue in *Chamberlin* v. *Smith* (that of Reserve Insurance Company) was determined to be an "occurrence" policy within the meaning of its insuring agreement as to the particular claim of legal malpractice, not a "claims made" policy as is the American Home policy. (72 Cal.App.3d at pp. 849, 850.) Second, the *Chamberlin* court was confronted with three legal malpractice policies which were issued *ab initio* as primary policies with provisions which could make the policies involved "excess" to the others if certain conditions transpired. The dispute in this instance involves a conflict between a policy (North River's) issued *ab initio* as an "excess" policy and a policy (American Home's) issued *ab initio* as a "primary" policy.

---

[4] The "other insurance" provision in American Home policy No. LPL 6164815 is as follows: "If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss and claims expenses than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to acts or omissions which occur prior to the inception date of the policy, the insurance hereunder shall apply only as excess over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limits of liability of this policy exceeds the sum of the applicable limits of liability of all such other insurance. In the event that this policy is treated as excess insurance, any claims expenses allocated to it shall be included in the limit of liability."

An "other insurance" provision in an insurance policy only becomes an issue when two or more policies apply at "the same level of coverage." (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d 593, 598.)

An "other insurance" dispute can only arise between carriers on the same level, it cannot arise between excess and primary insurers. (125 Cal.App.3d at p. 598) American Home argues that the American Home *claims made* "other insurance" provision requires that the North River policy be exhausted, or at the very least prorated with the American Home policy. American Home further contends this "other insurance" provision makes its policy excess to North River's policy. *Olympic* addressed this precise issue, holding that an "other insurance" provision applies only to policies at the same level.

*The effect of the "other insurance" clause in the North River policy.*

American Home next asserts that the "other insurance" provision[5] in the North River policy would have the effect of at least causing a proration of required payments as to any excess exposure over the two American Home occurrence policies which were in effect on the date of the stipulated event triggering the malpractice claim, should this court determine in the first instance that North River is excess to American Home. For this proposition, American Home cites *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d 593, as authority. A careful reading of *Olympic,* however, reveals that the decision does not stand for the proposition for which American Home contends. The effect of *Olympic* is to prorate between two "primary" carriers whose policies contain competing "other insurance" provisions but to deny a claim for proration against the secondary carrier involved whose policy also contained an "other insurance" provision. (*Id.,* at pp. 599-601.) *Olympic* is supportive of the position of North River in this litigation vice that of American Home.

 "A secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. This princi-

---

[5] The "other insurance" provision in North River policy No. DCL 009035 is as follows: "If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If the insured carries other insurance with the company covering a loss also covered by this policy (other than underlying insurance of which the insurance afforded by this policy is in excess) the insured must elect which policy shall apply and the company shall be liable under the policy so elected and shall not be liable under any other policy."

ple holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy.

"In *Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624 [40 P.2d 311] there were two primary policies with pro rata 'other insurance' clauses and a secondary policy written as 'specific excess' to one of the two primary policies. The court prorated the two primary policies, with the result that neither of the two primary policies was exhausted. Therefore, the secondary policy incurred no liability.

"In *Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d at p. 467, the court prorated two primary policies before holding the secondary policy liable. The secondary policy, written as specific excess insurance over a $10,000 policy, thus did not attach until exhaustion of the primary policies (with an aggregate limit of $110,000). '. . . ■ [W]hen a policy which provides excess insurance above a stated amount of primary insurance contains provisions which make it also excess insurance above all other insurance which contributes to the payment of the loss together with the specifically stated primary insurance, such clause will be given effect as written.' (*Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 626 [301 P.2d 602].)

"In the instant case, we have two primary policies with an aggregate limit of $1.02 million and a settlement amount of $495,000. It is clear, therefore, that when the two primary policies are prorated, neither policy is exhausted. The holdings in *Oil Base, Lamb,* and *Peerless* make it clear that liability under a secondary policy will not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the secondary policy.

"Olympic contends that this result is inequitable, in that no liability attaches under Employers 711 even though the total settlement is $495,000 and Employers 711 was written to cover liability in excess of $20,000. However, the result is no more inequitable than when a primary insurer, contracting to cover all losses up to a certain limit, finds that a second primary insurance policy has been written, with the result that each primary insurer is liable for only a pro rata share of the loss rather than the entire loss as contemplated in the contract.

"We conclude, therefore, that the trial court erred in prorating the loss among INA, Pacific, and Employers. The INA and Pacific policies provide primary coverage, and Employers 711 provides secondary coverage.

Primary coverage has not been exhausted, and Employers therefore incurs no liability." (Fns. omitted.) (126 Cal.App.3d at pp. 600-601.)

*Concession pertaining to prejudgment interest.*

The judgment in this case reflects that North River Insurance Company was awarded prejudgment interest at the rate of 10 percent per annum in the total amount of $454,246.06. American Home filed its objection to the award of prejudgment interest and memorandum of points and authorities in support thereof on June 8, 1988.

In the court's minute order of May 18, 1988, the court made reference to Code of Civil Procedure, section 685.010, subdivision (a) and, as stated below, it is the position of American Home that the court erred in its reliance on Code of Civil Procedure, section 685.010 inasmuch as that section is directed to the issue of postjudgment interest.

Code of Civil Procedure, section 685.010, subdivision (a) provides that: "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

Civil Code section 3287 discusses prejudgment interest and provides that "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . . [¶](b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

In *Davis & Cox v. Summa Corp.* (9th Cir. 1985) 751 F.2d 1507, the United States District Court for the Central District of California discussed the question of the rate at which prejudgment interest will be awarded and, in applying California law, the court stated that the prejudgment interest rate for the retention of money in California is limited to the legal rate of 7 percent per annum. (*Id.,* at p. 1522.)

The *Davis & Cox* decision arose out of one of the underlying actions which formed the foundation for the declaratory relief action below and it is the contention of American Home that any award of prejudgment interest must be limited to 7 percent per annum.

North River concedes that American Home's contention with respect to the proper rate for prejudgment interest in this case is correct.

## CONCLUSION

The judgment of North River against American Home is reversed and modified with respect to the amount of prejudgment interest awarded. The judgment is modified so that prejudgment interest in the amount of 7 percent per annum is allowed from the date of payment of $2 million by North River on December 1, 1985, to date of judgment on May 18, 1988, in the amount of $345,204.00.

In all other respects the judgment is affirmed. Each party to bear own costs.

Lillie, P. J., and Johnson, J., concurred.