[No. A082611. First Dist., Div. Four. Oct. 7, 1999.]

COMMERCE & INDUSTRY INSURANCE COMPANY, Plaintiff and Appellant, v.
CHUBB CUSTOM INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Burnham & Brown, James L. Wraith, Michael K. Johnson and Matthew G. Dudley for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Peter W. Davis, Joseph P. Mascovich; Newton, Kastner & Remmel, Stephen L. Newton and Lenell Topol McCallum for Defendant and Respondent.

OPINION

POCHÉ, Acting P. J.—On March 21, 1996, fire destroyed a New Orleans warehouse causing millions of dollars of damage. The sums involved are large but the issue here is simple—whether that loss is to be borne by one insurer or allocated between two insurers whose policies have competing "other insurance" provisions. We hold that the amount of loss must be prorated between the insurers.

BACKGROUND

New Orleans municipal authorities leased a plot of unimproved land to West Coast Liquidators, Inc. (West Coast). Sometime after West Coast built the warehouse and went into possession, it sold and assigned all of its "right, title and interest" under the master lease with the municipal authorities to TriNet Corporate Realty Trust, Inc. (TriNet). Simultaneously TriNet leased the premises back to West Coast. At the time of the fire West Coast was covered by a policy of insurance issued by Commerce & Industry Insurance Company (Commerce), while TriNet had a policy from Chubb Custom Insurance Company (Chubb). On behalf of West Coast, Commerce paid $57.5 million to the municipal authorities.

The Commerce policy included a liability limit of $60 million and was effective for the year commencing October 1, 1995. The policy included this provision: "OTHER INSURANCE—The Company shall not be liable for loss,

if, at the time of loss there is any other insurance which would attach if this insurance had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted in the payment of . . . [a covered] loss."

The Chubb policy had a maximum liability limit of $41,215,000 for the warehouse property for the calendar year 1996. It included a similar provision: "OTHER INSURANCE—If you have other insurance against a loss covered by this policy, we shall not be liable for a greater proportion of the loss than the applicable Limit of Insurance under this policy bears to the total applicable Limit of Insurance of all insurance against the loss." The policy also had this provision: "CONTINGENT COVERAGE—This insurance covers only in the absence of any other collectible insurance. At the time of loss, if there is any other insurance covering the property insured hereunder which in the absence of this insurance would cover the loss or damage hereunder covered, then the company shall not be liable."

The master lease with the New Orleans municipal authorities obligated West Coast to maintain a policy of property insurance. It also provided that the leasehold interest could be assigned, but the municipal authorities would have to approve in writing and the assignee would have to "comply with all terms and conditions of this Lease" and the lessee would still "remain primarily liable for all of the obligations contained in this Lease."

 Taking the position that these provisions made both West Coast and TriNet responsible for securing insurance for the warehouse and that therefore Chubb was in effect a joint insurer, Commerce initiated this action for equitable contribution, equitable indemnity, and declaratory relief. The gist of the complaint was that Chubb had paid nothing when in fact it was equitably obligated by reason of the respective policies' liability limits to shoulder 40.7 percent of the total loss, or approximately $23.4 million. Both parties moved for summary judgment. The trial court granted Chubb's motion and denied that of Commerce. Commerce perfected this timely appeal from the judgment entered in due course.

REVIEW

I

The policy provisions quoted above straddle three categories. Insurance policies commonly include "other insurance" provisions which "attempt to limit the insurer's liability to the extent that other insurance covers the same risk." (Croskey et al., Cal. Practice Guide: Insurance Litigation

(The Rutter Group 1997) ¶ 8:10, p. 8-2 rev. #1 1998.) One subcategory is known as "pro rata" provisions, which look to limit the insurer's liability to "the total proportion that its policy limits bear to the total coverage available to the insured." (*Id.*, ¶¶ 8:15 to 8:16, p. 8-4.) There is another subcategory known as "excess only" clauses, which require the exhaustion of other insurance; in effect, this insurer does not provide primary coverage but only acts as an excess insurer. (*Id.*, ¶ 8:19, p. 8-5.) A final subcategory of "escape" clauses extinguishes the insurer's liability if the loss is covered by other insurance. (*Id.*, ¶ 8:20, p. 8-5; see generally, *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 598 [178 Cal.Rptr. 908].)

The provisions of both policies have an element of the pure escape clause. Beyond this generality, Commerce's "other insurance" provision starts off sounding like an escape clause but then declares itself to be an excess only clause; its "in no event as contributing insurance" language appears to exclude characterization as a pro rata clause. Chubb's provisions are very different. Its "other insurance" provision is clearly a pro rata clause.[1]

"Escape" clauses came to be so named because they permit an insurer to make a seemingly ironclad guarantee of coverage, only to withdraw that coverage (and thus escape liability) in the presence of other insurance. (See, e.g., *CSE Ins. Group* v. *Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1845 [29 Cal.Rptr.2d 120] and decisions cited.) When "excess only" clauses are found in primary liability policies, they are treated the same way as escape clauses. (E.g., *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1305 [77 Cal.Rptr.2d 296]; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.*, *supra*, 126 Cal.App.3d 593, 599.) Because these types of provisions are disfavored, courts have developed a method of overriding them—"When two or more applicable policies contain such clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded." (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 507-508 [99 Cal.Rptr. 617, 492 P.2d 673] [escape clauses]; see *Fire Ins. Exchange* v. *American States Ins. Co.* (1995) 39 Cal.App.4th 653, 659 [46 Cal.Rptr.2d 135] [excess only clauses].) The reason for this rule is that the conflicting provisions are deemed essentially irreconcilable; if given effect

---

[1]Hybrid provisions of these sorts are common. (See *Continental Casualty Co.* v. *Pacific Indemnity Co.* (1982) 134 Cal.App.3d 389 [184 Cal.Rptr. 583] [characterizing equivalent provisions as "composite" clauses]; *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617 [301 P.2d 602] ["composite" "modified" and "partial escape" clauses].)

competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston. (See *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545, 557 [230 Cal.Rptr. 792] ["If we were to give effect to all . . . clauses in this instance, they would cancel each other out and afford the insured no coverage whatsoever. We would travel full circle with no place to say 'the buck stops here.' "]; *Continental Casualty Co.* v. *Pacific Indemnity Co., supra*, 134 Cal.App.3d 389, 397.) Courts have found for the pro rata solution when confronted by a variety of conflicts between differing types of "other insurance" provisions. (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 8:26 to 8:38, pp. 8-6 to 8-9; see generally, 8A Appleman on Insurance (rev. ed. 1981) §§ 4906-4910; 16 Couch on Insurance (2d ed. 1983) §§ 62:30, 62:71-62:83, pp. 460-461, 528-560.)

A predicate for prorating policies with conflicting "other insurance" provisions is that the policies operate on the same level of coverage, that is to say, two or more policies apply to the same damage or loss suffered by the same party. (See, e.g., *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra*, 65 Cal.App.4th 1279, 1304; *Pines of La Jolla Homeowners Assn.* v. *Industrial Indemnity* (1992) 5 Cal.App.4th 714, 723 [7 Cal.Rptr.2d 53].) Put another way, "[a]n 'other insurance' dispute can only arise between carriers on the same level, it cannot arise between excess and primary insurers." (*North River Ins. Co.* v. *American Home Assurance Co.* (1989) 210 Cal.App.3d 108, 114 [257 Cal.Rptr. 129].)

## II

 This was the approach taken by Chubb to avoid any responsibility for the loss. It sought summary judgment on the ground that its policy provided "contingent coverage and was not intended to be primary insurance on the property." The "contingent coverage" provision of its policy was not a true "other insurance" clause but merely a modification of "the extent of coverage" of the policy. To support this construction Chubb submitted declarations by two of its underwriters and TriNet's insurance manager. The gist of these declarations was that Chubb and TriNet intended that the Chubb policy was not intended to provide primary coverage but only "contingent" (i.e., excess) coverage. These materials persuaded the trial court: "The facts demonstrate that Commerce . . . and Chubb are not co-insurers of the same loss. The Court finds that the . . . [policies] . . . have different insureds, different risks, different premiums and are different types of insurance policies."

We are not persuaded. Such extrinsic evidence as was produced by Chubb may be relevant to insurer-insured disputes about ambiguous policy language, but it cannot be used to substantiate unexpressed intention and thereby vary clear and explicit contract provisions. (E.g., *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Shaw* v. *Regents of University of California* (1997) 58 Cal.App.4th 44, 55 [67 Cal.Rptr.2d 850]; *Berman* v. *Bromberg* (1997) 56 Cal.App.4th 936, 948 [65 Cal.Rptr.2d 777]; *Pieper* v. *Commercial Underwriters Ins. Co.* (1997) 59 Cal.App.4th 1008, 1016 [69 Cal.Rptr.2d 551]; see also *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75], quoted *post.*) The policy language here is very clear and inhospitable to the construction Chubb wishes to engraft upon it.

Chubb's policy was for "Commercial Property Insurance." It expressly listed the warehouse as covered property. The named insured was TriNet, which was insured against "physical loss or damage" caused by specified causes, including fire. The policy thus meets the definition of primary coverage—the insurer's liability arises immediately upon occurrence of a covered loss (e.g., *North River Ins. Co.* v. *American Home Assurance Co.*, *supra*, 210 Cal.App.3d 108, 112; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.*, *supra*, 126 Cal.App.3d 593, 599)—and fails to display the indicia of a true excess or umbrella policy, such as much briefer length or specific identification of the primary coverage policy or other policy language. (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 8:75 to 8:83.1, pp. 8-29 to 8-32; *Coca Cola Bottling Co.* v. *Columbia Casualty Ins. Co.* (1992) 11 Cal.App.4th 1176, 1182-1183 [14 Cal.Rptr.2d 643].) The few scattered references to "contingent property" and the "contingent coverage" provision quoted above, will not suffice to transmute what is obviously a policy for primary coverage.[2]

Chubb's attempt to prove that its policy is merely "contingent" or excess to the Commerce policy is unavailing. The fact that the policies have different insureds proves nothing.[3] Neither policy lists as named insureds the New Orleans municipal authorities, yet there can be no dispute that those

---

[2]The point can also be made by comparing the Chubb policy with that issued by Commercial. It too is a "Commercial Property Contract" that covers loss from "all risks" including fire. It also covers the New Orleans property, although not nearly so explicitly as the Chubb policy. Both the Commerce and the Chubb policies cover all property of a specific (and different) named insured.

[3]Interestingly enough, the West Coast-TriNet purchase agreement obligated to maintain TriNet as "an additional insured" on the policies West Coast would obtain and maintain and the West Coast-TriNet lease had a similar provision specifying that the insurance "shall be for

authorities, as the owner of the warehouse, would be the ultimate beneficiary of the insurance the master lease requires to be maintained. (See *Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 718, 723-724 [62 P.2d 735] [owner would have equitable lien on insurance proceeds if contractually required insurance payable to other persons]; 6 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) Landlord and Tenant, § 18:81, pp. 194, 197.) If TriNet breached the obligation to obtain insurance it assumed with the assignment of the lease, or if West Coast breached the same obligation in its lease with TriNet, the municipal authorities would have had a cause of action. (E.g., *Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 244-245 [73 P.2d 1163].) The policies would not insure the municipal authorities' property, but the distinct interests of West Coast and TriNet that were independently insurable. (E.g., *Russell* v. *Williams* (1962) 58 Cal.2d 487, 490 [24 Cal.Rptr. 859, 374 P.2d 827]; *Alexander* v. *Security-First Nat. Bank, supra*, at pp. 722-723.) As has already been shown, the two policies do cover the same risk—loss by fire. And the fact that both provide general insurance points to their overlapping coverage. (See Croskey et al., *supra*, ¶ 8:14, p. 8-4.) Nor is the matter of different premiums important, given that setting premiums is a notoriously imprecise and individualized proposition.[4] (See 19 Appleman on Insurance, *supra*, §§ 10501, 10503; 5 Couch on Insurance (3d ed. 1997) §§ 69:1-69:3, pp. 69-5 to 69-12.) Accordingly, we cannot sustain the trial court's conclusions that these "are different types of insurance policies."

Nor are we impressed by Chubb's argument (made in support of its summary judgment motion but unmentioned in the order granting that motion) that it is not a primary insurer by virtue of a provision in the West Coast-TriNet lease requiring West Coast "at its sole cost and expense" to "obtain and continuously maintain in full force and effect . . . 'All-Risk' policies of property insurance. . . ." Our rejection has two grounds. First, we are construing the policies issued by Commerce and Chubb and, as previously established, extrinsic evidence such as the West Coast-TriNet lease agreement cannot constitute proof of intent unexpressed in the policies. Second, the argument is unpersuasive on its merits. There is nothing in the

---

the benefit of [the] Landlord [TriNet] (as an additional insured and loss payee) . . . ." Obviously, had TriNet corrected West Coast's noncompliance with these requirements, the argument Chubb now makes would have considerably less force.

[4]To cite just some of the possible variables in this case, Commerce is a New York insurer, Chubb is incorporated in Delaware, and the two states may have very different methods of calculating or approving premium rates. In addition, the Commerce policy may be wider in scope—i.e., with a greater number of named insureds and insured locations—than is the Chubb policy, which could certainly be pertinent in explaining a premium differential. The course of dealings between the insurers and their respective insureds may have some bearing on the premiums charged, but this remains a matter of speculation.

record which demonstrates either that TriNet did not assume all of the obligations of West Coast's master lease with the municipal authorities—including the obligation to maintain insurance—or that the municipal authorities released TriNet from that obligation in their written consent to the assignment.[5] (E.g., *Hartman Ranch Co.* v. *Associated Oil Co.*, *supra*, 10 Cal.2d 232, 244-245; *German-American Sav. Bank* v. *Gollmer* (1909) 155 Cal. 683, 688 [102 P. 932]; 6 Miller & Starr, Current Law of Cal. Real Estate, *supra*, § 18:54, p. 113 and decisions cited.)[6]

### III

■ Having established that Commerce and Chubb must both be regarded as primary insurers, we come then to the dispositive issue—how are the conflicting "other insurance" provisions in the policies to be handled? We start with the actual provisions in the policies. (See *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.*, *supra*, 186 Cal.App.3d 545, 556.)

As previously shown, Commerce's provision is in plain effect an excess only clause, while the Chubb provisions are a hybrid pro rata/escape clause. If the Commerce provision is given literal effect, the positions of the parties would be reversed—Chubb would be the primary insurer up to its policy limit of $41,215,000, and Commerce would provide excess coverage for the remaining loss of $16,285,000.[7] Chubb's "contingent coverage" clause, if given a literal reading, would allow Chubb to escape from any liability because there was other coverage in the form of the Commerce policy, and

[5]All the record does include is an unexecuted "Estoppel Certificate and Agreement" from the municipal authorities that is attached as an exhibit to the West Coast-TriNet purchase agreement. This form includes a recital that the municipal authorities "hereby grant their consent and approval for, and no other consent or approval . . . for (1) the Company [i.e., West Coast] to transfer its interest in the Master Lease to TriNet, (2) TriNet to lease its interests to the Company . . . ."

[6]The purchase agreement and the lease executed by West Coast and TriNet each includes a provision specifying that it would be governed by the law of Louisiana. Neither Commerce nor Chubb has ever invoked these provisions, meaning any choice of law problem has been waived. (E.g., *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 581 [114 Cal.Rptr. 106, 522 P.2d 666].) Insofar as the purchase agreement and lease are relevant to this litigation, they shall be judged by California law.

[7]There is a line of authority which holds that in a situation with multiple primary coverages where one policy has an "excess only" clause and another policy with a "pro rata" clause, the former will be given effect and the latter will be treated as providing primary coverage. (See *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 302-303 [86 Cal.Rptr. 632] and decisions cited.) Actual application of this principle is, as we recently noted, subject to the proviso that "the rights of the policyholder are not adversely affected." (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th 1279, 1294, fn. 4.) Although the proviso is clearly satisfied here, Commerce has not chosen to invoke the principle. We are awarding Commerce exactly what it asked for in its complaint—"judgment against defendant

that coverage was sufficient to pay for the entire loss. On the other hand, that and the "other insurance" provision hold out the prospect of Chubb acting as excess insurer, but only for a pro rata amount.

If the policies' language is of little assistance, it is helpful to understand the broader context. " 'The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other . . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' " (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d 359, 369.) The original source of this quote noted that equity "overrides the terms of the insurance policies." (*Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 197 [318 P.2d 84].)

The precedents in this area, as this court recently observed in *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.App.4th 1279, 1305, are numerous and not easily harmonized. The task of harmonization is aided by the spadework already performed by the author of a leading treatise. This commentator demonstrates that there is authority that an excess only clause will prevail over either a pro rata clause or an escape clause—in either case the excess only policy will not be viewed as providing primary coverage—but the recent trend is to prorate the loss between the carriers. (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 8:27-8:29, pp. 8-6 – 8-7; see the decisions compiled in *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* at pp. 1305-1306; *CSE Ins. Group* v. *Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th 1839, 1843-1844; and *Employers Reinsurance Corp.* v. *Mission Equities Corp.* (1977) 74 Cal.App.3d 826, 831 [141 Cal.Rptr. 727]; see also fn. 7, *ante.*)

Commerce is entitled to the pro rata allocation it requested. Not only is that the approach endorsed by this court just last year in *Fireman's Fund,*[8] it also strikes us as the result that will most accurately reflect the equities. It was Commerce who stood by the insured from the start. It never tried to disclaim responsibility. Only after its duty to its insured was satisfied did Commerce try to recover from Chubb, and even then the amount of contribution it sought was not excessive. (See fn. 7, *ante.*) Finally, we detect a note

---

Chubb Custom Insurance Company for the amount of $23,404,500.00 pursuant to the doctrine[] of equitable contribution . . . ."

[8]And followed by the recent decision in *American Continental Ins. Co.* v. *American Casualty Co.* (1999) 73 Cal.App.4th 508 [86 Cal.Rptr.2d 560], which dealt with a similar "excess only" versus "pro rata" clash of policy provisions.

of legislative preference for prorating this loss. (See Ins. Code, § 591 ["In case of double insurance . . . . [¶] (a) In fire insurance, each insurer shall contribute ratably . . . ."].)

The summary judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for Commerce in the amount of $23,404,500. The parties shall bear their respective costs of appeal.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied November 4, 1999, and respondent's petition for review by the Supreme Court was denied February 2, 2000.