124 Cal.Rptr.2d 314 (2002)
101 Cal.App.4th 515
The HOME INSURANCE COMPANY, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Montrose Chemical Corporation of California, Real Party in Interest.
No. B157650.
Court of Appeal, Second District, Division One.
August 22, 2002.
Review Granted November 13, 2002.
*316 Charlston, Revich, Chamberlin & Williams, Stephen P. Soskin, and Timothy F. Rivers, Los Angeles, for Petitioner.
Latham & Watkins, David L. Mulliken, San Diego, Diana Strauss Casey, and Marc D. Halpern, Menio Park, for Real Party in Interest.
No appearance for Respondent.
*315 MIRIAM A. VOGEL, J.
In 1990, an insured sued its primary insurers to determine whether they had a duty to defend their insured in an environmental clean-up action. Over the course of 11 years and long after one of the primary insurers exercised a peremptory challenge against the judge to whom the case was originally assigned (Code Civ. Proc., § 170.6), the insured settled with all of the primary carriers, dismissed them from this action, and filed an amended complaint in which it added its excess insurer as a defendant and asked for a determination that the excess carrier had a duty to indemnify its insured. The excess insurer answered and filed a peremptory challenge against the judge to whom the case had been re-assigned in 1993. The insured objected, claiming the excess insurer was on the same "side" as the primary insurers and that the defense "side" had used its peremptory challenge. The trial court agreed with the insured and denied the motion for disqualification. In response to the excess carrier's writ petition, we hold that when primary and excess insurers are sued by their common insured in the same action, the interests of the two groups of insurers are substantially adverse to each other and they are on different sides within the meaning of Code of Civil Procedure section 170.6.

FACTS
In July 1990, Montrose Chemical Corporation of California sued its primary insurance carriers for declaratory relief, asking for a determination that the carriers were obligated to defend Montrose in an environmental clean-up action filed by the United States. Montrose's declaratory relief action was originally assigned to Judge G. Keith Wisot but one of the defendants (Travelers Indemnity Company) filed a motion to disqualify Judge Wisot (Code Civ. Proc., § 170.6) and the case was assigned to a different judge.[1] By mid-1993, the case had been assigned to Judge Joseph R. Kalin for all purposes.
In November 2001, Montrose filed a second amended complaint in which all of the *317 primary insurers were dropped and The Home Insurance Company, Montrose's excess insurer, was added as a defendant. The duty to defend allegations were dropped and the only remaining cause of action sought a declaration that Home was obligated to indemnify Montrose in underlying clean-up action. In January 2002, Montrose filed a third amended complaint to add an allegation that the "limits of the coverage underlying one or more of the Home policies have been exhausted."
Home answered Montrose's complaint and timely moved to disqualify Judge Kalin. (§ 170.6, subd. (2).) Montrose objected to the challenge, reminded the court that Travelers had already filed a peremptory challenge, and contended that Home was on the same "side" as the original defendants. Following a hearing at which Judge Kalin found that Home's interests as Montrose's excess insurer were not "substantially adverse" to the interests of Montrose's primary carriers, Home's disqualification motion was denied.
Home then filed a petition for a writ of mandate, asking us to direct Judge Kalin to accept its peremptory challenge. Over Montrose's opposition, we stayed proceedings in the trial court, issued an order to show cause, and set the matter for hearing.

DISCUSSION

A.
As relevant to the issues before us, section 170.6 provides:
"(1) No judge ... shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein that involves a contested issue of law or fact when it shall be established as hereinafter provided that the judge ... is prejudiced against any party or attorney or the interest of any party or attorney appearing in the action or proceeding.
"(2) Any party to ... such action or proceeding may establish this prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury ... that the judge . .. before whom the action or proceeding is pending or to whom it is assigned is prejudiced against any such party ... so that the party ... cannot or believes that he or she cannot have a fair and impartial trial or hearing before the judge .... If directed to the trial of a cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance....
"(3) If the motion is duly presented and the affidavit or declaration under penalty of perjury is duly filed ..., thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge ... to try the cause or hear the matter.... Except as provided in this section, no party or attorney shall be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding." (Emphasis added.)

B.
According to Home, the defendants in this case cannot be lumped together and must be viewed as two sides with substantially adverse intereststhe primary carriers *318 on the one hand, the excess carrier on the other. (Johnson v. Superior Court (1958) 50 Cal.2d 693, 700, 329 P.2d 5 [holding that a defendant in a multi-defendant case is not in a less favorable position than a lone defendant because "[s]uch a party cannot possibly be placed at a disadvantage unless one of his coparties has already disqualified a judge in the same action, and then only if his interests are substantially the same as the interests of the one who exercised the challenge"].)
According to Montrose, there never was and is not now a "substantial" adverse interest between Home and the primary carriers, and the defendants together constitute one side within the meaning of section 170.6. (Pappa v. Superior Court (1960) 54 Cal.2d 350, 354-355, 5 Cal.Rptr. 703, 353 P.2d 311 [the burden is on the party seeking disqualification to establish that its interests are substantially adverse to those of the other defendants; although "differences of opinion between codefendants as to procedural matters ... might, under some circumstances, show the existence of substantially adverse interests, it should not be assumed that this is true in the absence of a showing of what the circumstances are and how they affect each of the parties and the relationship between them"].)
To resolve this issue, we look first at the nature of the relationship between primary and excess carriers and conclude, as explained below, that (when sued by their common insured) they are usually adverse to each other. Given that conclusion, we then consider whether an actual and present adversity must be shown in this context, or whether the potential suffices to create a third side for purposes of section 170.6 and conclude, as explained below, that in this context the potential is sufficient.

C.
"Separate policies with separate limits of liability often cover the same risk [and there] may be several layers of `excess' insurance .... [¶] Primary insurance (`the first layer') provides immediate coverage upon the `occurrence' of a `loss' or the `happening' of an `event' giving rise to liability: `Primary coverage is insurance coverage whereby ... liability attaches immediately upon the happening of the occurrence that gives rise to liability.'" (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 8:74 to 8:75, pp. 8-31 to 8-32 (hereafter Rutter Insurance Litigation), quoting Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal. App.3d 593, 597, 178 Cal.Rptr. 908; see also Community Redevelopment Agency v. Aetna Casualty & Surety Co. (1996) 50 Cal.App.4th 329, 337-338, 57 Cal.Rptr.2d 755.) In the context of liability insurance, "the insurer providing such coverage has the primary duty to defend and indemnify the insured ..., unless otherwise excused or excluded by specific policy language." (Rutter Insurance Litigation, supra, ¶ 8:75, p. 8-32.)
"Excess insurance (`the second layer') provides coverage after other identified insurance is no longer on the risk. `Excess' means `insurance that begins [only] after a predetermined amount of underlying coverage is exhausted and that does not broaden the underlying coverage.'" (Rutter Insurance Litigation, supra, ¶ 8:76, p. 8-32, quoting in part Wells Fargo Bank v. California Ins. Guarantee Assn. (1995) 38 Cal.App.4th 936, 940, fn. 2, 45 Cal.Rptr.2d 537; see also Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1304, 77 Cal.Rptr.2d 296 ["Excess insurance provides coverage after other identified insurance is no longer on the risk"].) More specifically, an *319 excess insurance policy may be written as excess to a particular policy identified by name and number, or as excess to coverage provided by a particular insurer, or as excess to the limits of any other underlying insurance policyin which event the excess insurer has no duty to defend or indemnify until all underlying policies available to the insured, whether or not listed in the excess policy, are exhausted. (Rutter Insurance Litigation, supra, ¶¶ 8:77 to 8:77.1, pp. 8-32 to 8-33; see also North River Ins. Co. v. American Home Assurance Co. (1989) 210 Cal.App.3d 108, 112, 257 Cal.Rptr. 129; Hartford Accident & Indemnity Co. v. Superior Court (1994) 23 Cal.App.4th 1774, 1779-1780, 29 Cal. Rptr.2d 32.)

D.
Although one of the issues to be determined when Montrose's claims against Home are ultimately tried will be whether the limits of Montrose's primary policies have been exhausted, the narrow issue now before us is whether Home is entitled to exercise a peremptory challenge. While it is true that we must decide whether Home and the primary carriers are on the same "side" in order to determine whether Home has a separate challenge under section 170.6, we do not believe this inquiry should in itself require a determination of the merits of this casewhich is what would be required by a rule that imposed upon the trial court an obligation to determine whether Home's policy is excess to all or only some of Montrose's primary policies and, in either event, when the relevant primary coverage was exhausted or whether there are circumstances other than exhaustion obligating Home to "drop down" to assume the obligations of one of the primary insurers. (Rutter Insurance Litigation, supra, ¶¶ 8:86 to 8:89.5, pp. 8-34 to 8-35.)
More often than not, an excess carrier's interests are substantially adverse to the primary carriers' interests, with each attempting to foist liability onto the other, and we consider it significant in this case that Montrose has alleged only that the limits of coverage underlying "one or more of the Home policies have been exhausted," thereby leaving open the possibility of unexhausted primary coverage. (See Home Ins. Co. v. Superior Court (1996) 46 Cal.App.4th 1286, 1294, 54 Cal.Rptr.2d 292 [excess insurer entitled to pretrial discovery to determine terms of settlement between insured and primary insurer]; Ticor Title his. Co. v. Employers Ins. of Wausau (1995) 40 Cal.App.4th 1699, 1707, 48 Cal.Rptr.2d 368; Chubb/Pacific Indemnity Group v. Insurance Co. of North America (1987) 188 Cal.App.3d 691, 698, 233 Cal. Rptr. 539; Hartford Accident & Indemnity Co. v. Superior Court, supra, 23 Cal. App.4th at p. 1778, 29 Cal.Rptr.2d 32.) It follows, therefore, that an insured's primary and excess carriers, when sued in the same action, are on different "sides" within the meaning of section 170.6. To require anything more would require factual findings by the very judge whose disqualification is soughtand that makes no sense at all. (Nissan Motor Corp. v. Superior Court (1992) 6 Cal.App.4th 150, 154-155, 7 Cal.Rptr.2d 801; Avital v. Superior Court (1981) 114 Cal.App.3d 297, 302-303, 170 Cal.Rptr. 588; Eagle Maintenance & Supply Co. v. Superior Court (1961) 196 Cal.App.2d 692, 695, 16 Cal. Rptr. 745; Truck Ins. Exchange v. Superior Court (1998) 67 Cal.App.4th 142, 148, 78 Cal.Rptr.2d 721 [the right to a peremptory challenge cannot be "illusionary"].)
To avoid this conclusion, Montrose points to similarities between Home's policy and the policies issued by Montrose's primary insurers, to issues that were raised by the primary carriers at various *320 times during the years this case was pending before Judge Kalin, and to Home's pleadings in several separate actions involving Montrose and its various insurers. The point seems to be that, in Home's absence, the primary insurers were busy protecting Home's rights. Implicit in this argument is an assumption that we should review a truckload of pleadings and other documents to determine the propriety of Home's peremptory challengeand a further assumption that, necessarily, all trial courts confronted with this issue must conduct the same sort of inquiry. But that is precisely the sort of time-consuming process we deem inappropriate (because it requires fact finding by the very judge who is challenged), unnecessary (because the relationship itself shows sufficient adversity), and uneconomical (both for the court's time and the parties' pocketbooks). In short, the ineluctable tension between primary and excess carriers sued in the same lawsuit is sufficient to show substantial adversity and to create two defense sides within the meaning of section 170.6. (Cf. Sunkyong Trading (H.K.) Ltd. v. Superior Court (1992) 9 Cal.App.4th 282, 290, fn. 4,11 Cal.Rptr.2d 504.)
In an alternative attempt to avoid this conclusion, Montrose points to the fact that it has resolved its claims against its primary insurers and contends that, whatever adversity there might have been had Home been named as a defendant when the primary insurers were still parties, that adversity evaporated with the dismissal of the other defendants. Montrose's argument assumes its own conclusion and ignores the fact that Home, having just joined the party, might at some point bring the primary insurers back into the case.[2] At this stage, we do not know the terms of Montrose's settlement with its primary carriers, and we do not know whether Home retains the right to cross-complain against the primary insurers. More to the point, we do not believe the trial court should have to make these determinations before it can decide whether a peremptory challenge is valid. Those issues will be determined at the trial of Montrose's claims against Home, not by Judge Kalin in deciding whether he will be the one to preside at that trial, and not by us in deciding whether Judge Kalin's ruling was proper. Home met its burden and its motion to disqualify Judge Kalin must be granted.[3]

*321 E.
Montrose's concerns about the effect of this rule on complex insurance litigation appears to be more imagined than real. Whenever a plaintiff engages in seriatim service of process, there is the risk that a late-named defendant will exercise a peremptory challenge against the judge who has been handling the case. Whatever considerations there may be in favor of a rule that would both enhance the trial court's ability to control its caseload and discourage gamesmanship, section 170.6 gives the late-appearing defendant whose interests are substantially adverse to those of the other defendants the right to exercise a challenge within 10 days after its appearancenotwithstanding that one of the defendants on another side earlier exercised its own challenge. (Cf. School Dist. of Okaloosa County v. Superior Court (1997) 58 Cal.App.4th 1126, 1129-1130, 68 Cal.Rptr.2d 612; and see Nissan Motor Corporation v. Superior Court, supra, 6 Cal.App.4th at p. 155, 7 Cal.Rptr.2d 801 [judicial efficiency is not to be fostered at the expense of a litigant's rights under section 170.6].) Like it or not, the disqualification motion must be granted.

DISPOSITION
The petition is granted, and a peremptory writ will issue commanding Judge Kalin (1) to vacate his order denying Home's motion for disqualification and (2) to issue a new order granting Home's motion and transferring this case to another department. The parties are to pay their own costs of this writ proceeding.
We concur: SPENCER, P.J., and ORTEGA, J.
NOTES
[1] All section references are to the Code of Civil Procedure.
[2] Montrose's interpretation of section 170.6 is problematic for yet another reasonthe possibility that reasonable minds might differ about the legitimacy of using an 11-year-old case for what amounts to an entirely new action against a new party. Under section 170.6, a disqualification motion "cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings." (Jacobs v. Superior Court (1959) 53 Cal.2d 187, 190, 1 Cal.Rptr. 9, 347 P.2d 9.) For purposes of section 170.6, a "subsequent proceeding" is a "continuation" of a former proceeding when the decision will be based on evidence taken in the former proceeding (Paredes v. Superior Court (1999) 77 Cal.App.4th 24, 30, fn. 5, 91 Cal.Rptr.2d 350) and matters of form, such as the existence of two or more case numbers, are generally not determinative. (Id. at p. 31, 91 Cal.Rptr.2d 350.) If the original trial judge cannot be avoided for post-judgment proceedings, the corollary of the rule ought to be that a plaintiff cannot hang onto a judge simply by amending an existing complaint and adding a new defendantparticularly where, as here, the relief sought is altogether different (duty to defend in the original action, indemnity under the current pleadings) and all of the original defendants have been dismissed. (City of Hanford v. Superior Court (1989) 208 Cal.App.3d 580, 593, 256 Cal.Rptr. 274 [treating a subsequent proceedinga purported cross-complaintas a new action because, among other things, it did not challenge an order or judgment made in the original proceeding].) For this reason, we feel no need to respond to Montrose's suggestion that Home's challenge constitutes "procedural gamesmanship."
[3] Montrose asks us to consider the federal cases interpreting "side" for purposes of diversity jurisdiction. Since there is a split of authority on that issue (as explained in Employers Ins. of Wausau v. Crown Cork & Seal Co. (3d Cir.1991) 942 F.2d 862, 864-865), there appears to be no good reason to pursue that approach.