[No. D031786. Fourth Dist., Div. One. May 24, 2000.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Respondent, v. BELLEFONTE INSURANCE COMPANY, Defendant and Appellant.

1228

## COUNSEL

Neil, Dymott, Perkins, Brown & Frank, James A. McFall; Traub Eglin Lieberman Straus, Stephen D. Straus and Jonathan R. Harwood for Defendant and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Janelle F. Garchie and James E. Friedhofer for Plaintiff and Respondent.

McKenna & Cuneo and Michael H. Fish for Cities of Alameda, Capitola, Carlsbad, Dinuba, Huron, Modesto, Monterey, Orange Cove, Redlands, San Luis Obispo, Santa Clara and Tracy as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—In this action between successive third party liability carriers, Bellefonte Insurance Company (Bellefonte) appeals a summary judgment in favor of Pacific Indemnity Company (Pacific), determining Bellefonte had a duty to defend its insured in underlying litigation. We are unpersuaded by Bellefonte's contention the "owned property" exclusion of its policies barred coverage. We agree, however, that equitable contribution principles require proration of defense costs notwithstanding the "excess-only" "other-insurance" provision of Pacific's policies. Accordingly, we reverse the judgment insofar as it awards Pacific the total amount of defense costs and remand the matter for further proceedings.

### BACKGROUND

In June 1996 Environmental Advocates and Save Our Bay, Inc. (together Environmental Advocates) sued San Diego Unified Port District (Port District) for declaratory relief, injunction and civil penalties. Environmental Advocates alleged Port District held the Bay of San Diego (Bay) in public

trust and breached its duties as trustee to protect the Bay and its marine animals and vegetation from contamination occurring at unspecified times.

Port District tendered the defense of the action to Pacific and Bellefonte, who issued commercial general liability (CGL) policies to the Port District for the periods 1963 to 1974 and 1976 to 1979, respectively.[1] Pacific accepted the tender but Bellefonte rejected it. After Port District prevailed at trial, Pacific sued Bellefonte for reimbursement of more than $300,000 incurred in defense costs.

Pacific moved for summary judgment. In opposition, Bellefonte argued the owned property exclusion of its policies barred coverage and thus no defense duty arose. Under the exclusion, coverage was deleted for damage "to property owned or occupied by or rented to the insured, or, except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping."

The court found the exclusion inapplicable and granted Pacific's motion. The court also found that under the parties' other-insurance provisions, Bellefonte was responsible for the full amount of defense costs.

DISCUSSION

I. *Duty to Defend*

A

"A liability insurer owes a duty to defend its insured when the claim creates any potential for indemnity. [Citation.] The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured." (*Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 413-414 [79 Cal.Rptr.2d 52].)

In *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153], the court explained the parties' burdens of proof in a declaratory relief action regarding the duty to defend: "To prevail, the insured must prove the existence of a *potential for coverage,*

---

[1]"Where . . . successive CGL policy periods are implicated, bodily injury and property damage which is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods." (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 689 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Id.* at p. 300, original italics.) The *Montrose* test is applicable to an action between successive third party liability insurers. (*Maryland Casualty Co. v. National American Ins. Co.* (1996) 48 Cal.App.4th 1822, 1831 [56 Cal.Rptr.2d 498].)

B

█ The allegations of the underlying complaint against Port District undisputedly triggered coverage under the basic scope of Bellefonte's policies. The question is whether the owned property exclusion nonetheless barred coverage.

On appeal, Bellefonte concedes Port District did not own, rent or occupy the Bay within the meaning of the exclusion. Rather, Bellefonte asserts the exclusion bars coverage because the Bay was "entrusted to [Port District] for safekeeping."[2] █ "We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy." (*Smith Kandal Real Estate v. Continental Casualty Co., supra,* 67 Cal.App.4th at p. 414.)

█ "The State . . . holds title to the navigable waterways and the land beneath them within its borders as a trustee for the public . . . . [¶] A state, as trustee, may delegate its authority to manage and control public use to a local agency. [Citation.] Under the San Diego Unified Port District Act . . . the State of California delegated its authority to manage and control [the] Bay to Port District."[3] (*Graf v. San Diego Unified Port Dist.* (1992) 7 Cal.App.4th 1224, 1228-1229 [9 Cal.Rptr.2d 530]; § 4.) Port District thus holds "the tidelands and submerged lands, together with any facilities thereon," associated with the Bay (§ 14), and it also has the authority to regulate the use of navigable waters. (§ 55, subd. (a).)

We have found no California case interpreting an exclusion for damages to property "entrusted to the insured for storage or safekeeping." Notably, the few out-of-state cases on the exclusion concern its application to personal property. For instance, in *Topeka Ry. Equipment v. Foremost Ins. Co.*

---

[2]Pacific, whose policies also contain an owned property exclusion, essentially ignores Bellefonte's argument. We consider, however, an amici curiae brief filed in support of Pacific by the Cities of Alameda, Capitola, Carlsbad, Dinuba, Huron, Modesto, Monterey, Orange Cove, Redlands, San Luis Obispo, Santa Clara and Tracy.

[3]The act is codified in Harbors and Navigation Code, appendix I. Statutory references are to appendix I unless otherwise stated.

(1980) 5 Kan.App.2d 183 [614 P.2d 461], the court held that incidental storage or safekeeping of railroad cars while awaiting modification and repair was not the type of storage or safekeeping covered by the exclusion. (*Id.* at p. 464; see also *Retail Systems v. CNA Ins. Companies* (Minn.Ct.App. 1991) 469 N.W.2d 735, 738 [exclusion inapplicable where computer tape was delivered to insured primarily for processing]; *Adman Products Co. v. Federal Ins. Co.* (1989) 187 Ill.App.3d 322 [134 Ill.Dec. 936, 543 N.E.2d 219, 221-222] [exclusion inapplicable where display materials were delivered to the insured primarily for assemblage]; *Prahm v. Rupp Const. Co.* (Minn. 1979) 277 N.W.2d 389, 390 [exclusion inapplicable where a backhoe was delivered to the insured primarily for transport].)

█ "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

█ While not expressly so limited, under the plain meaning rule an insured could reasonably assume the exclusion for property "entrusted to the insured for storage or safekeeping" applied solely to personal property subject to a bailment or similar arrangement. "[S]afekeeping" is defined as "the state of being preserved in safety from injury, loss, or escape[.]" (Webster's 3d New Internat. Dict. (1993) p. 1998.) Usages given concern the safekeeping of personal property. (*Ibid.*) "[S]torage" is defined as "the safekeeping of goods in a warehouse or other depository." (*Id.* at p. 2252.) Although the words storage and safekeeping are stated disjunctively in the exclusion, they connote a similar meaning and should be considered together. (See *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 5 [125 Cal.Rptr. 408] [use of the word "or" must be considered in context of the writing].)

In any event, even if the exclusion were arguably germane to public trust property such as the Bay, judicially noticed facts show its inapplicability here. The "storage or safekeeping" language indicates coverage is barred only where the insured's task is holding property for its return to the owner in an unaltered condition. The state did not entrust the Bay to Port District for mere safekeeping. Rather, Port District was established "for the

acquisition, construction, maintenance, operation, development and regula-
tion of harbor works and improvements, . . . and for the promotion of
commerce, navigation, fisheries, and recreation[.]" (§ 4; see also §§ 30, 37,
55 & 57.) This case is akin to *Topeka Ry. Equipment v. Foremost Ins. Co.,
supra,* 614 P.2d 461, and other out-of-state cases cited above, holding the
exclusion inapplicable where storage or safekeeping was not the primary
purpose of the entrustment.

■ "An insurer may select the risks it will insure and those it will not,
and a clear exclusion will be respected. [Citation.] Where the exclusion is
clear, we will not rewrite the insurance contract to impose coverage where
none was contemplated. [Citation.] However, an exclusion or limitation on
coverage must be clearly stated and will be strictly construed against the
insurer." (*Smith Kandal Real Estate v. Continental Casualty Co., supra,* 67
Cal.App.4th at p. 414.) ■ Here, the owned property exclusion does not
clearly exclude coverage for the underlying third party claims and it is
unlikely the parties contemplated its application to the Bay or its environs.

## II. *Effect of Other-Insurance Clauses*

### A

■ " ' "Most insurance policies contain 'other insurance' clauses that
attempt to limit the insurer's liability where other insurance covers the same
risk. Such clauses attempt to control the manner in which each insurer
contributes to or shares a covered loss." [Citation.]' [Citation.] Historically,
'other insurance' clauses were designed to prevent multiple recoveries when
more than one policy provided coverage for a particular loss. [Citation.]
' "[T]he application of 'other insurance' clauses requires, as a foundational
element, that there exist multiple policies applicable to the *same loss.*"
[Citation.]' " (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65
Cal.App.4th 1279, 1304 [77 Cal.Rptr.2d 296] (*Fireman's Fund*), original
italics.)

■ There are several types of other-insurance clauses. Pacific's poli-
cies contain what is referred to as an "excess-only" clause. (Croskey et al.,
Cal. Practice Guide: Insurance Litigation (The Rutter Group 1999) ¶ 8:15, p.
8-4.) It provides: "If the insured has other valid and collectible insurance
against the loss covered by this policy, the insurance extended by this policy
shall be excess insurance only and not primary or contributing." Bellefonte's
policies, on the other hand, contain what is referred to as a "pro rata"
clause, meaning that "[i]f there is other valid and *collectible* insurance, the
insurer shall not be liable for more than its pro rata share of the loss—i.e.,

the proportion that its policy limits bear to the total coverage available to the insured."[4] (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 8:16, p. 8-4.)

## B

Preliminarily, we dispose of Pacific's argument that its other-insurance clause made its policies excess and thus it had no defense duty unless Bellefonte's primary policies were exhausted. ■ As the court explained in *Fireman's Fund:* "Primary coverage provides immediate coverage upon the 'occurrence' of a 'loss' or the 'happening' of an 'event' giving rise to liability. [Citation.] It is defined as 'insurance coverage whereby, *under the terms of the policy,* liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. [Citation.]' [Citation.] In the context of liability insurance, a primary insurer generally has the *primary* duty to defend and to indemnify the insured, unless otherwise excused or excluded by specific policy language. [Citation.] Excess insurance provides coverage after other identified insurance is no longer on the risk. 'Excess' coverage means 'coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted.'" (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1304, original italics.)

■ Here, there is no suggestion that Pacific's policies were umbrella policies expressly providing only excess coverage, or that Port District had any other insurance during the 11 years it was covered by Pacific. Rather, Port District purchased CGL policies that required Pacific to defend and indemnify it immediately upon the occurrence of a covered event. Thus, notwithstanding the excess-only nature of Pacific's other-insurance clause, both it and Bellefonte were primary insurers on the same risk. (See *Fireman's Fund, supra,* 65 Cal.App.4th at p. 1307; *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 746 [89 Cal.Rptr.2d 415] [policy is primary where it does not display indicia of true excess or umbrella policy, such as specific identification of primary coverage policy].)

---

[4]The other-insurance clause of Bellefonte's policies provides:

"The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision . . . ."

The contribution provision calls for contribution by equal shares if all policies on the risk so state, or in accordance with the insurer's respective limits of liability.

## C

 The question remains whether proration of defense costs is required, as Bellefonte contends, notwithstanding Pacific's excess-only clause. " 'Excess-only' provisions often have collided with 'proration' provisions, with results that cannot be harmonized." (*CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1843 [29 Cal.Rptr.2d 120] (*CSE*).

"In one line of cases it has been held that where one policy contains a proration clause . . . and another policy contains an 'excess insurance' clause . . . the loss must be prorated. [Citations.] The cases which have reached this result have done so either on the basis of a reconciliation of the language of the policy provisions without consideration of the equities [citations], or through the imposition of overriding equitable considerations. . . .

"The other line of decision holds . . . that the policy with the proration clause is primary and must bear the loss to its policy limits. [Citations.] [Fn. omitted.] The rationale of these cases is based upon the general rule 'that courts will give heed to the excess insurance provisions contained in policies, even in situations where to do so will be inconsistent with proration provisions in the other policies.' " (*Donahue Constr. Co. v. Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 302 [86 Cal.Rptr. 632], and cases surveyed therein.)

In *CSE, supra,* 23 Cal.App.4th at page 1844, the court observed: "The lineage of the cases favoring the excess-only clause over the proration clause can be traced, through *Pacific Employers Ins. Co. v. Maryland Casualty Co.* [(1966)] 65 Cal.2d 318, 328-329 [54 Cal.Rptr. 385, 419 P.2d 641], to *American Automobile Ins. Co. v. Republic Indemnity Co.* (1959) 52 Cal.2d 507 [341 P.2d 675]. *American,* however, simply gave effect to customary policy provisions that a driver's policy is excess over an owner's policy. [Citation.] Because *American* addressed only the owner versus driver problem, it should not be read as holding generally that excess-only clauses are favored over proration clauses."

The *CSE* court concluded proration was the better rule where the policies contained competing excess-only and pro rata clauses. (*CSE, supra,* 23 Cal.App.4th at p. 1844.) "It must be remembered that '[t]he reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish

ultimate justice in the bearing of a specific burden.' " (*Id.* at pp. 1844-1845.) "[T]he cases forcing proration on excess-only policies seem to manifest a court-made public policy that proration is a favored method of apportioning a loss among those who have contracted to insure against it." (*Id.* at p. 1845.)

The *CSE* court noted that in California proration is required as a matter of course when both policies contain excess-only clauses, and thus a primary insurer whose policy contains such a clause cannot reasonably expect to avoid coverage. Imposition of the entire liability on the issuer of the prorated policy would ignore the proration provision and create an anomaly: proration would be allowed only where both other-insurance clauses state they will *not* prorate. (*CSE, supra,* 23 Cal.App.4th at pp. 1845-1846.)

The court further explained that ". . . public policy disfavors 'escape' clauses, whereby coverage purports to evaporate in the presence of other insurance. [Citations.] This disfavor should also apply, to a lesser extent, to excess-only clauses, by which carriers seek exculpation whenever the loss falls within another carrier's policy limit." (*CSE, supra,* 23 Cal.App.4th at p. 1845.) Additionally, ". . . considerable logic and fairness underlie the so-called Oregon rule, under which mutually repugnant other-insurance clauses are reconciled by proration." (*Ibid.*)

In *Fireman's Fund, supra,* 65 Cal.App.4th at page 1307, the court adopted the reasoning of *CSE* in affirming proration notwithstanding one insurer's excess-only clause. (See also Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 8:27, p. 8-6.) In *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co., supra,* 75 Cal.App.4th 739, the court noted that although "there is authority that an excess only clause will prevail over either a pro rata clause or an escape clause[,] the recent trend is to pro rate the loss between the carriers." (*Id.* at p. 749, citing Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 8:27 to 8:29, pp. 8-6 to 8-7.)

We are persuaded by the reasoning of *CSE* and its progeny, and thus hold that equitable contribution principles require proration of defense costs here.[5] (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1293 [equitable contribution is right to recover from co-obligor who shares liability with party

---

[5]Pacific relies upon *St. Paul Fire & Marine v. American Home* (1994) 444 Mich. 560 [514 N.W.2d 113], in which the Michigan Supreme Court held that where errors and omissions policies had competing other-insurance clauses, an excess-only clause was afforded full effect and the carrier with a pro rata clause was required to bear the loss to its policy limits. The court rejected the Oregon rule, referred to as the minority position, as improperly "nullifying the negotiated intent of the parties[.]" (*Id.* at p. 120.) For the reasons discussed, we decline to follow the Michigan case.

seeking contribution].) We leave the method of apportionment to the trial court's discretion, however, particularly since Pacific has not briefed the issue on appeal. (See *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 52-54 [52 Cal.Rptr.2d 690] [discussion of various proration methods]; *Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1853-1854, fn. 14, 1861-1864 [54 Cal.Rptr.2d 176] [same].)[6]

## DISPOSITION

We reverse the judgment insofar as it concerns the amount of Pacific's contribution for defense costs, and remand the matter for further proceedings in conformance with this opinion. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

Huffman, J., and Haller, J., concurred.

---

[6]Bellefonte waived appellate review of its argument that defense costs were excessive. " ' "This is the Golden Rule of Summary Adjudication: if [a fact] is not set forth in the separate statement, *it does not exist.*" ' " (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 [21 Cal.Rptr.2d 104], original italics.)