116 Cal.Rptr.2d 174 (2002)
95 Cal.App.4th 891
SCOTTSDALE INSURANCE COMPANY, Plaintiff, Cross-Defendant, and Respondent,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Pennsylvania et al., Defendants, Cross-Complainants, and Appellants.
No. E028602.
Court of Appeal, Fourth District, Division Two.
January 30, 2002.
Ordered Not Officially Published May 1, 2002.[*]
*176 Haight, Brown & Bonesteel, Roy G. Weatherup, Los Angeles, Stephen M. Caine, Santa Monica; Sedgwick, Detert, Moran & Arnold, Lawrence E. Picone and Kathleen Caswell Vance, Los Angeles, for Defendants, Cross-Complainants, and Appellants.
Luce, Forward, Hamilton & Scripps, Rex Heeseman and David R. Krause Leemon, Los Angeles, for Highlands Insurance Company, as Amicus Curiae, on behalf of Defendants, Cross-Complainants, and Appellants.
Selman-Breitman, Neil Selman, Anthony L. Cione and Gregory J. Newman, Los Angeles, for Plaintiff, Cross-Defendant, and Respondent.

*175 OPINION

RICHLI, J.
"Other insurance" clauses direct how liability is to be allocated among multiple insurers who are liable on the same risk. The drafters of such clauses are engaged in a game of "hot potato": each insurer is trying to shift as much of the risk as possible to other insurers, well aware that they will be trying to shift it back again. When faced with conflicting "other insurance" clauses, the courts ordinarily "split the potato"that is, they dole out the risk in more or less equal portions to each of the participating insurers.
The new twist in this case is that plaintiff Scottsdale Insurance Company (Scottsdale) used two different "other insurance" clauses. One purported to apply to the duty to indemnify; the other purported to apply to the duty to defend. Moreover, the clause applicable to the duty to defend was made an integral part of the statement of that duty. Thus, it provided that Scottsdale "shall have the right and duty to defend any suit against the insured, seeking damages which are payable under the above Insuring Agreement . . ., provided, however, that no other insurance affording a defense or indemnity against such a suit is available to the insured." (Capitalization omitted.) By contrast, defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National) and American International Specialty Lines Insurance Company (American) each used a standard "other insurance" clause, which applied solely to the duty to indemnify.
At least three lawsuitswhich we must assume, for purposes of our opinion, involve covered claimshave been filed against the parties' common insured. National and American have stepped up to the plate and defended; Scottsdale has refused to defend. In this action, on cross-motions for summary judgment and summary adjudication, the trial court ruled that Scottsdale had no duty to contribute to National and American's defense costs.
We will assume, without deciding, that Scottsdale's "other insurance" clause regarding its duty to defend is governed by the same rules of law as "other insurance" clauses in general. Thus, we do not reach Scottsdale's contention that, because it engrafted this clause onto its promise to defend, the clause is part of the insuring grant and hence not subject to these rules.
We will hold that this case does not involve conflicting "other insurance" clauses. Scottsdale's "other insurance" clause is therefore enforceable, unless it leaves the insured less than fully protected. As we read Scottsdale's clause, so long as National, American, or any other insurer has a duty to defend, Scottsdale does not; *177 but if and when every other insurer's duty to defend has terminated, Scottsdale's duty to defend will debut. Thus, the insured will always be fully protected. We will therefore affirm the trial court's ruling that National and American are not entitled to contribution from Scottsdale.

I

FACTUAL BACKGROUND
The following facts are taken from the papers filed in connection with the parties' cross-motions for summary judgment and summary adjudication. Consistent with the applicable standard of review, we view the evidence in the light most favorable to the losing party (Slatkin v. University of Redlands (2001) 88 Cal.App.4th 1147,1150, 106 Cal.Rptr.2d 480 [Fourth Dist., Div. Two])i.e., in this case, to appellants National and American.
Each of the parties issued an occurrence-based umbrella liability insurance policy, for a different one-year period, to Davey Roofing, Inc. (Davey). Thus, Superior National Insurance Company (Superior) (not a party to this appeal) issued a policy covering the period from May 1, 1988, to May 1, 1989. National issued a policy covering the period from May 1, 1989, to May 1, 1990. Scottsdale issued one policy covering the period from May 1, 1990, to May 1, 1991, and a second policy covering the period from May 1, 1991, to May 1, 1992. Industrial Indemnity Company (Industrial) (also not a party to this appeal) issued a policy covering the period from May 1, 1992, to May 1, 1993. Finally, American issued a policy covering the period from May 1, 1993, to May 1, 1994.

A. Appellants' Policies.

The "other insurance" clauses of National's policy and American's policy were virtually identical; they both provided: "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with, such other insurance." (Capitalization omitted from National policy; comma added to American policy.)
The "duty to defend" provisions of National's policy and American's policy were likewise identical. They both provided: "This section shall . . . apply to occurrences not covered by any underlying insurance due to exhaustion of any aggregate limits by reason of any losses paid thereunder:
"1. We will defend any suit against the insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof...."
Finally, National's policy provided: "This policy shall cease to apply after the applicable limits of liability have been exhausted by payment of defense costs and/or judgments and/or settlements." American's policy, however, provided: "We agree to pay the amounts incurred under this Insurance Agreement [i.e., defense costs] . . . in addition to the limits of liability...."

B. Scottsdale's Policies.

Scottsdale's policies included an "other insurance" clause which provided: "The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the insured . . .; provided that if such other insurance provides indemnity only in excess of a stated amount of liability per occurrence, the insurance afforded by this policy shall contribute therewith with respect to such part of ultimate net loss as is covered hereunder but the Company shall not be liable for a greater proportion of such loss than the amount which would *178 have been payable under this policy bears to the sum of said amount which would have been payable under each other excess indemnity policy applicable to such loss, had each such policy been the only policy so applicable." (Capitalization omitted.)
With respect to the duty to defend, however, Scottsdale's policies also provided: "The Company shall have the right and duty to defend any suit against the insured, seeking damages which are payable under the above Insuring Agreement . . ., provided, however, that no other insurance affording a defense or indemnity against such a suit is available to the insured." (Capitalization omitted.)
A number of construction defect actions have been filed against Davey. These include Billedo v. John Laing Homes, San Bernardino Superior Court Case No. SCV39706 (Billedo action), Dorsey v. J.C. Manning Company, Inc., San Bernardino Superior Court Case No. SCV40993 (Dorsey action) and Alonzo v. A-117/118, San Bernardino Superior Court Case No. SCV 51470 (Alonzo action). At least for purposes of this appeal, it is undisputed that these actions allege that Davey is liable for property damage that occurred continuously throughout the parties' respective policy periods.
Appellants have advised us there are at least eight other actions now pending against Davey that are at least potentially covered by the policies at issue. They filed a request for judicial notice of these actions. We hereby deny the request. We generally do not take judicial notice of matters that were not before the trial court when it ruled. (Doers v. Golden Gate Bridge etc. Dist. (1979) 23 Cal.3d 180, 184, fn. 1, 151 Cal.Rptr. 837, 588 P.2d 1261; Culligan v. State Compensation Ins. Fund (2000) 81 Cal.App.4th 429, 440, 96 Cal. Rptr.2d 656.) Thus, as far as the record is concerned, the only such actions are the Billedo, Dorsey and Alonzo actions (collectively, the covered actions). We understand, however, that in principle additional actions covered by the policies could be filed.
All the primary insurance policies that would otherwise provide Davey with a defense have been exhausted. National, American, Superior and Industrial have provided Davey with a defense. When the Billedo and Dorsey actions were settled, Scottsdale contributed to Davey's portion of the settlement. Scottsdale, however, has refused to participate in or to contribute to Davey's defense.

II

PROCEDURAL BACKGROUND
Scottsdale filed this action against Superior, National, Industrial and American. In the operative complaint, it sought a declaration that it had no duty to participate in providing Davey with a defense against the covered actions.
National and American cross-complained against Scottsdale, Superior, and Industrial, seeking a declaration that they were entitled to contribution from the cross-defendants toward Davey's indemnity and defense costs.
The commissioner of insurance placed Superior in a conservatorship due to insolvency. Scottsdale then voluntarily dismissed its complaint against Superior without prejudice.
Scottsdale filed a motion for summary judgment. National and American filed a cross-motion for summary adjudication, which was set for hearing at the same time as Scottsdale's motion for summary judgment.
After hearing argument, the trial court granted Scottsdale's motion; it denied National and American's cross-motion. It explained: *179 "I think that when contractual language is clear that I'm under an obligation to follow it. [¶] . . . [¶][T]he express language contained in the policy makes clear that the Scottsdale policy is only triggered when there is no other policy of insurance available to Davey Roofing. There is other insurance coverage afforded to Davey."
National and American voluntarily dismissed their cross-complaint against Scottsdale and Industrial, without prejudice. The trial court then entered judgment on the complaint in favor of Scottsdale and against National and American.

III

THE RELEVANCE OF THE DIFFERING POLICY PERIODS
Appellants contend the provision of Scottsdale's policies requiring it to defend if, and only if, "no other insurance affording a defense or indemnity against such a suit is available" does not apply, because Davey had no other umbrella insurance for the same policy period. We disagree.
"Insurance policies are contracts construed in accordance with the parties' mutual intent at the time of contract formation, as inferred from the written provisions. [Citations.] The `clear and explicit' meaning of the provisions, interpreted in their `ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' [Citation.] If the meaning a layperson would ascribe to insurance contract language is not ambiguous, courts will apply that meaning. [Citation.]" (Vandenberg v. Superior Court (1999) 21 Cal.4th 815, 839-840, 88 Cal. Rptr.2d 366, 982 P.2d 229, quoting Civ. Code, §§ 1638, 1644.)
Scottsdale's policies defined the "other insurance" that would excuse its duty to defend as "insurance affording a defense or indemnity" against "any suit against the insured, seeking damages . . . payable under the above insuring agreement." (Capitalization omitted.) Thus, "other insurance" was defined in terms of particular suits, not any particular policy period. The policy is clear and explicit on this point.
"[A] duty to defend arises when the suit 'potentially seeks damages within the coverage of the policy.' [Citations.]" (La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1994) 9 Cal.4th 27, 43, 36 Cal.Rptr.2d 100, 884 P.2d 1048, quoting Gray v. Zurich Ins. Co. (1966) 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168.) "Indeed, the insurer must defend the entire action even when only one of several causes of action is potentially covered. [Citations.]" (Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 869, 77 Cal.Rptr.2d 107, 959 P.2d 265.)
Under a standard occurrence-based comprehensive general liability policy, "bodily injury and property damage that is continuous or progressively deteriorating throughout successive . . . policy periods[ ] is potentially covered by all policies in effect during those periods." (Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 673, 42 Cal.Rptr.2d 324, 913 P.2d 878.) "[T]he duty to defend embraces all the parts of such a claim in which some such harm may possibly have resulted, whether within the policy period or beyond." (Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 71, 70 Cal.Rptr.2d 118, 948 P.2d 909.) Accordingly, even though appellants' policies cover a different policy period than Scottsdale's, their policies all afford a defense against the covered actions.
*180 We conclude that appellants' policies constitute "other insurance affording a defense against" the covered actions within the meaning of Scottsdale's policies. It is irrelevant that appellants' policies covered different policy periods than Scottsdale's.

IV

THE EFFECT OF THE POLICY PROVISION QUALIFYING SCOTTDALE'S DUTY TO DEFEND
Appellants contend the trial court erred by denying them contribution based on the provision of Scottsdale's policies that states that it has no duty to defend if other insurance affords a defense or indemnity. First, they argue that this is really an "escape clause" rather than an exception to coverage. Second, they argue that an escape clause is unenforceable when it would leave the insured less than fully protected. Scottsdale responds that this provision is part of the insuring grant and therefore not an escape clause. Scottsdale also responds, alternatively, that, even if this provision is an escape clause, it can be enforced because it will not leave the insured unprotected.
We need not decide whether it makes any difference that the critical provision appears in the insuring grant. (See Chamberlin v. Smith (1977) 72 Cal.App.3d 835, 848-850, 140 Cal.Rptr. 493; but see Home Ins. Co. v. St. Paul Fire & Marine Ins. Co. (1st Cir.2000) 229 F.3d 56, 62-63; Fremont Indem. Co. v. New England Reinsurance Co. (1991) 168 Ariz. 476, 478-479, 815 P.2d 403.) We will hold that, even assuming it is a true escape clause, enforcing it will not leave Davey without a defense at any time. Accordingly, appellants are not entitled to contribution.
"[T]he right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others.... The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]" (Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal. App.4th 1279, 1293, 77 Cal.Rptr.2d 296, fn. omitted.)
". . . `The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.... Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' [Citation.]" (Signal Companies, Inc. v. Harbor Ins. Co. (1980) 27 Cal.3d 359, 369, 165 Cal.Rptr. 799, 612 P.2d 889, quoting Amer. Auto. Ins. Co. v. Seaboard Surety Co. (1957) 155 Cal.App.2d 192, 195-196, 318 P.2d 84.) "[T]he trial court's determination of which method of allocation will produce the most equitable results is necessarily a matter of its equitable judicial discretion. [Citations.]" (Centennial Ins. Co. v. United States Fire Ins. Co. (2001) 88 Cal.App.4th 105, 111, 105 Cal.Rptr.2d 559.)
"Even so, absent compelling equitable reasons, courts should not impose an obligation on an insurer that contravenes a provision in its insurance policy. [Citation.]" (Truck Ins. Exchange v. Unigard Ins. Co. (2000) 79 Cal.App.4th 966, 974, 94 Cal.Rptr.2d 516; accord, Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 *181 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889; see also Montrose Chemical Corp. v. Admiral Ins. Co., supra, 10 Cal.4th at p. 681, fn. 19, 42 Cal.Rptr.2d 324, 913 P.2d 878["[a]llocation of the cost of indemnification once several insurers have been found liable . . . requires application of principles of contract law to the express terms and limitations of the various policies . . ."].)
"`"`Most insurance policies contain "other insurance" clauses that attempt to limit the insurer's liability where other insurance covers the same risk. Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss.' [Citation.]" [Citation.] Historically, "other insurance" clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a particular loss. [Citation.]' " (Pacific Indemnity Co. v. Bellefonte Ins. Co. (2000) 80 Cal.App.4th 1226, 1234, 95 Cal.Rptr.2d 911, quoting Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at p. 1304, 77 Cal.Rptr.2d 296.)
"The modern comprehensive general liability policy typically contains such a clause. It may take the form of outright denial of coverage under the policy if there is other insurance covering the risk (an 'escape' clause), a provision that the policy provides only excess coverage if there is other insurance covering the risk (an `excess' clause), a provision that if there is other insurance covering the risk the loss will be shared on some proportional basis with that other insurance (a `pro rata' clause), or some other variation upon the same theme. [Citation.]" (Stonewall Ins. Co. v. City of Polos Verdes Estates (1996) 46 Cal.App.4th 1810, 1856, 54 Cal.Rptr.2d 176.)
In general, "an `other insurance' clause dispute cannot arise between excess and primary carriers but only between insurers on the same level. [Citations.] This is because an `other insurance' clause is only relevant when two or more policies apply at the same level. [Citations.]" (Reliance Nat. Indemnity Co. v. General Star Indemnity Co. (1999) 72 Cal.App.4th 1063, 1077, 85 Cal.Rptr.2d 627.) It is therefore important to keep in mind the distinction between a policy with an excess clause and a "true" excess policy, which does not apply until the limits of a specified primary policy have been exhausted. A primary policy may have an excess clause. (See Pacific Indemnity Co. v. Bellefonte Ins. Co., supra, 80 Cal.App.4th at p. 1235, 95 Cal.Rptr.2d 911; Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co. (1999) 75 Cal.App.4th 739, 745-748, 89 Cal.Rptr.2d 415.) Conversely, an excess policy may not have an excess clause; it may have a pro rata clause, an escape clause, or no "other insurance" clause whatsoever.
An umbrella policy, such as the policies at issue here, provides coverage which is excess to specified underlying insurance. However, it may also fill gaps in the coverage provided by the underlying insurance. (Century Indemnity Co. v. London Underwriters (1993) 12 Cal. App.4th 1701, 1707, fn. 5, 16 Cal.Rptr.2d 393; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 8:83-8:85, pp. 8-32.4 to 8-33.) Thus, an umbrella policy, although something of a hybrid, is more akin to a true excess policy than a primary policy. (See Continental Ins. Co. v. Lexington Ins. Co. (1997) 55 Cal.App.4th 637, 646-647, 64 Cal. Rptr.2d 116.) That is particularly true in this case, because there is no issue regarding the "gap-filling" aspect of the umbrella policies; the only issue is regarding their excess insurance aspect.
*182 "[P]roration is a favored method of apportioning a loss among those who have contracted to insure against it. [¶] [Thus,] public policy disfavors `escape' clauses, whereby coverage purports to evaporate in the presence of other insurance. [Citations.] This disfavor should also apply, to a lesser extent, to excess-only clauses...." (CSE Ins. Group v. Northbrook Property & Casualty Co. (1994) 23 Cal.App.4th 1839, 1845, 29 Cal. Rptr.2d 120.) Nevertheless, "[contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." (Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal. App.4th at p. 1304, 77 Cal.Rptr.2d 296.) "No case . . . holds that `escape' clauses are void per se.... As long as the insured is protected and financial responsibility is provided for the protection of the public an `escape' clause is not contrary to public policy or the law. [Citation.]" (Underground Constr. Co. v. Pacific Indemnity Co. (1975) 49 Cal.App.3d 62, 67-68, 122 Cal.Rptr. 330.)
The most common instance in which a court may disregard an escape (or excess) clause to protect the insured is when it conflicts with another escape (or excess) clause. ". . . `When two or more applicable policies contain such clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded.' [Citations.] The reason for this rule is that the conflicting provisions are deemed essentially irreconcilable; if given effect competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston. [Citations.]" (Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co., supra, 75 Cal.App.4th at pp. 744-745, 89 Cal.Rptr.2d 415, quoting Argonaut Ins. Co. v. Transport Indem. Co. (1972) 6 Cal.3d 496, 507, 99 Cal.Rptr. 617, 492 P.2d 673.) That is not, however, the only such instance. For example, a court may disregard an escape clause where the policy limits of the other insurance are inadequate to indemnify the insured fully. (Continental Casualty Co. v. Pacific Indemnity Co. (1982) 134 Cal.App.3d 389, 397,184 Cal.Rptr. 583.)
Here, with respect to the duty to indemnify, each of the policies has an "other insurance" clause. But "[t]he duty to defend is broader than the duty to indemnify." (Certain Underwriters at Lloyd's of London v. Superior Court (2001) 24 Cal.4th 945, 961, 103 Cal.Rptr.2d 672, 16 P.3d 94.) ". . . Whereas the duty to indemnify can arise only after damages are fixed in their amount [citations], the duty to defend may arise as soon as damages are sought in some amount [citations]." (Id., at p. 958, 103 Cal.Rptr.2d 672, 16 P.3d 94.) With respect to the duty to defend, only Scottsdale's policies have any "other insurance" clause whatsoever. Appellants' duty to defend is unqualified; their policies require them to defend "any suit against the insured alleging liability insured under the provisions of this policy...."
Appellants disagree. Their "other insurance" clauses provide that "[i]f other valid and collectible insurance with any other insurer is available to the insured covering a toss also covered hereunder, this insurance shall be excess of, and shall not contribute with, such other insurance." (Italics added.) They argue that a "loss," as used in their policies, includes defense costs. They conclude that their "other insurance" clauses do apply to the duty to defend.
Appellants' policies do not define "loss." However, they do define "ultimate net loss," as "the total sum which the insured, *183 or any company as its insurer, or both, become obligated to pay by reason of Personal Injury, Property Damage or Advertising Liability claims . . ., and shall also include hospital, medical and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, or expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims ...." (Italics added; comma added to National policy.)
We may assume, without deciding, that "loss" as used in appellants' policies does include defense costs. Their "other insurance" clauses, however, apply only when there is other insurance "covering a loss also covered hereunder." (Italics added.) The policies set forth two distinct insuring agreements. The first, entitled "COVERAGE," provides: "We will pay on behalf of the Insured that portion of the ultimate net loss . . . which the insured shall become legally obligated to pay as compensatory damages . . . because of Personal Injury, Property Damage or Advertising Liability, caused by an occurrence to which this insurance applies...." (Per American policy; "will become legally obligated to pay" in National policy.) The second, entitled "DEFENSE," provides: "We will defend any suit against the insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof...." Thus, a "covered" loss is one within the insuring agreement entitled "COVERAGE"a loss for which the insured is entitled to indemnity. Even assuming defense costs are a "loss," they are not a "covered loss." (Cf. Jarrett v. Allstate Ins. Co. (1962) 209 Cal.App.2d 804, 811-812, 26 Cal.Rptr. 231 ["loss payable" meant loss as capped by policy limits, not total loss suffered by insured].)
Our interpretation is consistent with the distinction, in ordinary legal usage, between coverage and the duty to defend. (E.g., Foster-Gardner, Inc. v. National Union Fire Ins. Co., supra, 18 Cal.4th at p. 869, 77 Cal.Rptr.2d 107, 959 P.2d 265["[a]n insurer has a duty to defend . . . when the underlying suit potentially seeks damages within the coverage of the policy" (italics added) ].) The concept of insurance which "covers" defense costs makes sense in one, and only one, situation when the policy expressly provides that the insurer has no duty to defend, merely a duty to reimburse the insured for defense costs. Apparently such a provision is not uncommon in excess policies (see FMC Corp. v. Plaisted & Companies (1998) 61 Cal.App.4th 1132, 1198-1201, 72 Cal.Rptr.2d 467) and directors' and officers' liability policies. (See Helfand v. National Union Fire Ins. Co. (1992) 10 Cal. App.4th 869, 879, 13 Cal.Rptr.2d 295.) Needless to say, the umbrella policies here expressly included a duty to defend.
Our interpretation is also consistent with case law applying "other insurance" clauses. For example, in Continental Cas. Co. v. Zurich Ins. Co. (1961) 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455, the insured tendered the defense of the underlying action to three insurers. One accepted the tender and provided a defense; the other two refused. The insurer who had provided a defense then filed a declaratory relief action against the other two. (Id., at p. 31, 17 Cal.Rptr. 12, 366 P.2d 455.) Each of the three policies had an "other insurance" clause. One was a pro rata clause, which applied when there was "`other insurance against a toss covered by this policy'"; the other two were excess clauses, which provided that "`with respect to loss arising out of the . . . use of any non-owned automobile the applicable insurance afforded by this policy shall be excess....'" (Id., *184 at p. 34, 17 Cal.Rptr. 12, 366 P.2d 455, italics added, italics omitted.)
The Supreme Court began by holding that all three insurers' policies covered the risk. (Continental Cas. Co. v. Zurich Ins. Co., supra, 57 Cal.2d at pp. 32-33, 17 Cal.Rptr. 12, 366 P.2d 455.) Next, it held that the excess clauses were enforceable; therefore, the policy with the pro rata clause "provided primary insurance . . ., and [the other two] policies were excess only and should be prorated after the . . . primary coverage had been exhausted. [Citation.]" (Id., at p. 35, 17 Cal.Rptr. 12, 366 P.2d 455.)
Finally, the court upheld the trial court's order "that all three companies share in the costs of defense in the same ratio that they share in paying the . . . judgment ...." (Continental Cas. Co. v. Zurich Ins. Co., supra, 57 Cal.2d at p. 36, 17 Cal.Rptr. 12, 366 P.2d 455.) It explained: "[A]ll obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend. . ." (Id., at p. 37, 17 Cal.Rptr. 12, 366 P.2d 455.) "The facts that the agreement to defend the insured may be severable from the general indemnity provisions, and that each insurer independently owes that duty to its insured, constitute no excuse for any insurer's failure to perform." (Ibid.)
It should be apparent that the Supreme Court did not believe that "loss," as used in the "other insurance" clauses, included defense costs. Otherwise, once it had discussed the allocation of indemnity, it would not have needed to discuss separately the allocation of defense costs; it would have simply held that the insurer with the pro rata clause was the primary insurer with respect to defense costs as well as indemnity. Because the primary insurer's duty to defend, unlike its duty to indemnify, was not subject to any limits (see Continental Cas. Co. v. Zurich Ins. Co., supra, 57 Cal.2d at p. 37, 17 Cal.Rptr. 12, 366 P.2d 455), that would have meant the insurers with excess clauses were not liable for defense costs at all. Instead, as a matter of equity, the court ordered the insurers with excess clauses to contribute to the defense costs in the same proportion as they contributed to the judgment.
Appellants argue that, in Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296, "neither [of the insurers in the case] questioned the fact that standard `other insurance' clauses applied equally to defense and indemnification costs." Of course, "[a]n opinion is not authority for a point not raised, considered, or resolved therein. [Citations.]" (Styne v. Stevens (2001) 26 Cal.4th 42, 57-58, 109 Cal. Rptr.2d 14, 26 P.3d 343.) Interestingly, however, the excess clauses in Fireman's Fund did expressly apply to the duty to defend. They provided: "`This insurance is excess over any of the other insurance . . . [¶] . . . [¶] [t]hat is valid and collectible insurance.... [¶] [ ] When this insurance is excess, we will have no duty . . . to defend any claim or "suit" that any other insurer has a duty to defend.'" (Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at p. 1303, fn. 8, 77 Cal.Rptr.2d 296, italics added.) Precisely because the parties did not distinguish between defense costs and indemnity, the opinion did not quote the pro rata clauses involved. (See id., at p. 1303, 77 Cal.Rptr.2d 296.) Thus, appellants cannot show that they did not apply to the duty to defend. Certainly that would explain why the issue was not raised.
We therefore conclude that the "other insurance" clauses at issue are not in conflict. *185 We can give effect to the duty-to-defend provisions of both appellants' policies and Scottsdale's policies at the same time.
At oral argument, counsel for appellants, relying on the maxim that the duty to defend is broader than the duty to indemnify, asserted that we were the first California court ever to hold that an insurer had a duty to indemnify but no duty to defend. We must decline that honor, however, because it belongs to the California Supreme Court.
In Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d 359, 165 Cal. Rptr. 799, 612 P.2d 889, the primary insurer defended an action against the insured which was settled with a payment by the primary insurer of $25,000, its policy limits, and a payment by the excess insurer of $10,000. (Id., at p. 363, 165 Cal.Rptr. 799, 612 P.2d 889.) The primary insurer then sought contribution to the defense costs from the excess insurer. (Id, at p. 364, 165 Cal.Rptr. 799, 612 P.2d 889.) The excess insurer's policy provided that it was subject to the same terms and conditions as the primary policy, "`except as regards . . . the obligation to investigate and defend[ ]'"; that if a claim appeared likely to exceed the primary limits, the primary insurer was required to obtain the excess insurer's written consent before incurring defense costs; and that the excess insurer would be liable for defense costs only if it had consented "`to the proceedings continuing[.]'" (Id., at pp. 362-363, 165 Cal. Rptr. 799, 612 P.2d 889, italics omitted.)
The Supreme Court held that the excess insurer had no obligation to contribute to the defense costs because the primary insurer had not sought its consent until after the underlying action had already been settled. (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at pp. 365-371, 165 Cal.Rptr. 799, 612 P.2d 889.) The court specifically rejected the argument that the excess insurer had a duty to contribute to the defense because it had a duty to contribute to the settlement. (Id., at pp. 368-369, 165 Cal.Rptr. 799, 612 P.2d 889.) In other words, it held that, on the facts presented, the excess insurer had a duty to indemnify but no duty to defend.
Appellants argue that enforcing Scottsdale's escape clause would prejudice Davey by reducing the total funds available for its defense. Appellants waived this argument by failing to raise it below. (In re Marriage of King (2000) 80 Cal.App.4th 92, 117, 95 Cal.Rptr.2d 113.) Separately and alternatively, even if not waived, it lacks merit. Scottsdale responds by noting that appellants have agreed to defend, and are defending, Davey. This response is incomplete and somewhat simplistic; upon fuller consideration, however, we agree with Scottsdale.
What is lacking in Scottsdale's analysis is that appellants' respective duties to defend are not unlimited. National's policy is a "self-consuming"or "burning limits"policy. (See Aerojet-General Corp. v. Transport Indemnity Co., supra, 17 Cal.4th at p. 76, fn. 29, 70 Cal.Rptr.2d 118, 948 P.2d 909.) It provided: "We will pay the amounts incurred under this Section `A' [i.e., defense costs] but any such payments shall: [¶] . . . reduce the limits of liability of this policy as stated in the Declaration...." Thus, National's duty to defend is capped by the policy limits.
Nevertheless, as between National and Scottsdale, the escape clause can be enforced without prejudicing Davey. As long as National has a duty to defend, Scottsdale does not. The funds National has available for both defense and indemnity are its policy limits, which are $2 million per occurrence. If and when this $2 million is exhausted, there will no longer be any "other insurance affording a defense or indemnity against such a *186 suit...." At that point, Scottsdale's duty to defend will kick in. Thus, Davey will never be left without a defense.
Next, we bring American into the analysis. American's policy was not self-consuming. Rather, it provided: "`We agree to pay the amounts incurred under this Insurance Agreement [i.e., defense costs] . . . in addition to the limits of liability....'" However, it also provided: "This policy shall cease to apply after the applicable limits of liability have been exhausted by payment of . . . judgments and/or settlements."
Assuming, for the moment, this last provision was fully enforceable according to its terms (see generally Johnson v. Continental Ins. Companies (1988) 202 Cal. App.3d 477, 481-486, 248 Cal.Rptr. 412), then if and when American pays out its policy limits, which are $5 million per occurrence, to resolve one or more of the covered actions, its duty to defend will terminate. The same will be true with respect to any other covered actions which have since been filed, or which may yet be filed, against Davey. Once that happens, and once National, too, has "burned" its policy limits, there will no longer be any "other insurance affording a defense or indemnity against such a suit...." At that point, Scottsdale's duty to defend will kick in. Once again, we may enforce the escape clause because Davey will not be left without a defense.
Assuming, contrariwise, this provision was not fully enforceable, so that under some circumstances American could still have a duty to defend even after paying out its policy limits toward any judgments or settlements (see Jenkins v. Insurance Co. of North America (1990) 220 Cal. App.3d 1481, 1489-1491, 272 Cal.Rptr. 7; Croskey et al., Cal. Practice Guide: Insurance Litigation, supra, ¶ 7:653, p. 7B-40), it is yet again true that Davey will not be left without a defense.
Arguably, there could be some future dispute as to whether American's duty to defend has terminated, and hence whether Scottsdale's duty to defend has kicked in. (See, e.g., Hartford Accident & Indemnity Co. v. Superior Court (1994) 23 Cal.App.4th 1774, 29 Cal.Rptr.2d 32.) That dispute, however, is too remote, speculative, and hypothetical to be resolved in this declaratory relief action. (Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 170-172, 188 Cal. Rptr. 104, 655 P.2d 306; BKHN, Inc. v. Department of Health Services (1992) 3 Cal.App.4th 301, 308-310, 4 Cal.Rptr.2d 188.)
Finally, we complete the analysis by adding Superior and Industrial to the mix. If they had "self-consuming" policies, they are in the same position as National; if not, they are in the same position as American. Scottsdale still has no duty to defend until every other umbrella policy has been exhausted.
At first glance, one might think our holding allows Scottsdale to enjoy a windfall based on a fortuitous variation in the wording of its policy. From an insurer's standpoint, however, the existence of other insurance is always a windfall. Moreover, the wording of Scottsdale's policies was not merely fortuitous; it was manifestly intended to bring about the very result we reach. Other insurance companies are free to adopt the same wordingand probably will. After the dust settles, we will not see many more cases like this, in which only one policy incorporates an "other insurance" clause into its duty-to-defend provision. In most cases, every applicable policy will have such a provision. The issue then will be how to reconcile them. Although we need not resolve that issue today, it seems most likely that each insurer will have to contribute to the defense.
We conclude that the provision of Scottsdale's policies which requires it to *187 defend if, and only if, "no other insurance affording a defense or indemnity against such a suit is available" is enforceable. Under this provision, Scottsdale cannot have any duty to defend until appellants' duty to defend and their duty to indemnify have both terminated. Thus, as Scottsdale was seeking a declaration that it had no duty to contribute to appellants' costs of defending Davey, the trial court properly granted summary judgment in favor of Scottsdale.
Scottsdale also purported to be seeking a declaration that it had no duty whatsoever to defend Davey. The only issue in actual controversy, however, was whether Scottsdale had a duty to contribute to appellants' costs of defending Davey. Davey is not a party. Thus, it would be inappropriate to issue a declaration more broadly specifying Scottsdale's duties vis a vis Davey. (See Simmons v. California Institute of Technology (1949) 34 Cal.2d 264, 276-277, 209 P.2d 581.) Admittedly, our holding that Scottsdale has no present duty to defend is based, in part, on our conclusion that, once the policy limits of all other applicable policies have been exhausted, Scottsdale will have a duty to defend. The extent to which this intermediate step in our reasoning is binding on Scottsdale and/or appellants, however, we leave for another day.

V

DISPOSITION
The judgment is affirmed. Scottsdale shall recover costs on appeal against appellants.
We concur: RAMIREZ, P.J. and HOLLENHORST, J.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977.)